IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| NAQUITA WILLIAMS and SAMARA COHEN, individually and on behalf of a class of similarly situated individuals,<br><br>Plaintiffs,<br><br>v.<br><br>VILLAGE OF ALSIP, ILLINOIS, acting by and through its police department; and JAY MILLER, individually and in his official capacity as Chief of Police,<br><br>Defendants. | Case No. 22-cv-4892<br><br>Judge<br><br>Magistrate Judge |

**CLASS ACTION COMPLAINT AND JURY DEMAND**

Plaintiffs, Naquita Williams and Samara Cohen, through their attorneys, and for their Complaint against Defendant Village of Alsip, Illinois, and Defendant Jay Miller, individually and in his official capacity as Chief of Police of the Alsip Police Department, allege as follows:

**NATURE OF THE ACTION**

1. Defendant Alsip has in place an ordinance that permits its Chief of Police to send a letter to any landlord in Alsip when the Chief suspects that a tenant of the landlord is involved in criminal activity (and it is enough if that suspicion is derived solely from a police report). The ordinance does not require a finding or determination of guilt of the tenant by a judge or jury. The ordinance does not require that a copy of the notice be provided to the tenant, before or after it is sent. The ordinance *requires* the Chief to tell the landlord in the letter that the Chief "has information that the rental property is in dan-

ger of becoming a chronic public nuisance rental property", *requires* the notice to "demand that corrective action be taken" by the landlord, and requires the Chief to explain in the notice that, if there is "a subsequent occurrence", the Chief of Police may declare the property to be a "public nuisance", such that the landlord's leasing permit can be revoked.

2. Defendant Chief Jay Miller sent two such letters to Plaintiff's landlord. Defendant sent the letters attached as Exhibits 1 & 2 to Wenxin Pang, an Alsip property owner and landlord, referring to Plaintiff Samara Cohen. Cohen has cohabitated an apartment, along with Plaintiff Naquita Williams, located in Alsip, Illinois, under a lease between Wenxin Pang and Naquita Williams. Defendants, acting under color of law, have deliberately denied Plaintiffs due process under the U.S. Constitution; have deliberately attempted to interfere in the contractual relation between Pang and Williams; and have otherwise violated state and federal law, as described more fully below. This matter is brought as a class action on behalf of Plaintiffs and those similarly situated to Plaintiffs (a) who have been accused of a violation of the Village of Alsip Landlord Licensing Ordinance, and (b) against whom Defendants have instructed landlords to take action as tenants under the Ordinance.

3. This is a Section 1983 *Monell* claim, 42 U.S.C. § 1983, along with pendent claims, against Defendant Alsip Police Department and the Village of Alsip, Illinois.

**PARTIES**

4. Defendant Village of Alsip is a political subdivision of the State of Illinois, located 19 miles southwest of downtown Chicago, Illinois, and is organized and existing under the laws of the State of Illinois.

5.      Defendant Jay Miller is an individual natural person, and is the Chief of Police of Defendant Alsip Police Department.

6.      Plaintiff Naquita Williams is a Black person, and is a resident and citizen of the State of Illinois. Plaintiff has resided in Alsip, Illinois during all relevant times.

7.      Plaintiff Samara Cohen is a Black person, and is a resident and citizen of the State of Illinois. Plaintiff has resided in Alsip, Illinois during all relevant times.

## JURISDICTION AND VENUE

8.      Jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331; and pursuant to U.S.C. § 1343, for damages and the deprivation of civil rights. This action is authorized and instituted pursuant to 42 U.S.C. § 1983 and that line of cases decided and following *Monell v. Dept of Soc. Servs.*, 436 U.S. 658, 701 (1978).

9.      Venue is proper in this Court because Defendant resides in this District, and because the practices hereafter alleged to be unlawful were committed within the jurisdiction of the United States District Court for the Northern District of Illinois, Eastern Division.

## FACTUAL BACKGROUND

10.     Plaintiff Williams has resided, over the past four years and at all relevant times, in a rental unit in an apartment building in Alsip, Illinois, pursuant to a written lease agreement. Plaintiff Williams is the mother of Plaintiff Samara Cohen.

11.     Plaintiff Cohen has resided in the same Alsip apartment as her mother.

12. On September 28, 2021, Plaintiff Cohen was a minor. At no time has Plaintiff Cohen been a signatory to any residential lease agreement in the Village of Alsip, though Cohen has the right to reside in the rental unit as a member of Williams' family.

13. Wenxin Pang is the owner of the apartment building in which Plaintiffs Williams and Cohen reside (herein, "the Rental Property"), and provided Plaintiff Williams with a lease to the Rental Property.

14. Plaintiff Cohen was involved in a traffic incident on September 28, 2021, at the intersection of 119th Street and Pulaski Road, in which the driver of another vehicle struck the vehicle Cohen was driving; and then attempted to strike Plaintiff with her vehicle. An altercation ensued; and Cohen was arrested by Alsip Police (herein, "the Traffic Incident").

15. The next day, Defendant Jay Miller, acting individually and in his official capacity as Chief of Police of the Alsip Police Department and on behalf of the Village of Alsip, Illinois, sent to Pang a letter dated September 29, 2021. A redacted copy of the letter is attached as Exhibit 1 (herein, "the Letter").

16. The Letter attached as Exhibit 1 does *not* speak for itself. See, *State Farm Mut. Auto. Ins. Co. v. Riley*, 199 F.R.D. 276, 279 (N.D. Ill. 2001).

17. The Letter to Pang recites that the Rental Property located in Alsip, Illinois (which was singularly Plaintiff Cohen's and Williams' rented apartment, residence and home) "may be in the danger (sic) of becoming a chronic nuisance property in accordance to (sic) the Village of Alsip Landlord Licensing Ordinance Section 12-707." See, Ex. 1.

18. The Letter to Pang also recites that "Alsip Police Department has a documented incident (sic) that took place"; that "a Female tenant was involved in a traffic accident in town"; and that "(t)his incident is directly related to" the unit in which Plaintiffs Cohen and Williams reside "at the aforementioned address." See, Ex. 1.

19. The Letter to Pang, signed by Defendant Jay Miller, continues: "I recommend that corrective action be taken on your part to ensure that subsequent public nuisance activity does not reoccur", and that Mr. Pang's "rental property could be deemed a chronic nuisance rental property." See, Ex. 1.

20. The Traffic Incident did not take place in or on the Rental Property; and Defendants knew when they sent the Letter that the Traffic Incident they referenced in the letter did not take place in or on the Rental Property.

21. The Village of Alsip sent a second letter to Pang, signed by Defendant Jay Miller, on or about March 3, 2022, again referencing the Rental Property and "a documented incident that took place on February 27th, 2022", and that "injuries to tenant" resulted in a "Battery offense" that "resulted in three (3) arrests", "directly related to unit (Plaintiffs' apartment number) at the aforementioned address." The letter again warned that "Your rental property could be deemed a chronic nuisance rental property", and admonished Mr. Pang to "Please take whatever necessary steps you deem appropriate to prevent this from happening." *See*, Ex. 2.

22. The Village of Alsip Landlord Licensing Ordinance Section 12-707 referenced in the letters, titled "Chronic Nuisance", is attached as Exhibit 3 hereto (herein, "the Nuisance Ordinance").

23. The Nuisance Ordinance permits the Chief of Police to declare a rental unit to be a chronic public nuisance, with no evidence and with complete discretion.

24. The Nuisance Ordinance permits the Chief of Police to notify a landlord of property that the property may be considered by the Chief to be a chronic public nuisance, when the Chief receives a report of a law enforcement agency, including the Defendant Village's police department of which he is Chief, that describes public nuisance activity "in or on the same rental property". Ordinance, 12-707(b).

25. The Nuisance Ordinance does not require any notice to be provided to a tenant accused of being a "chronic public nuisance"; and provides no process or procedure to the tenant to dispute the allegation, claim or purported finding of purportedly being a chronic public nuisance, nor the opportunity to ascertain and confront the evidence in opposition.

26. The letters to Pang assert a municipal policy, a practice of a municipal policy maker, and/or decision of a final municipal policy maker. *McDowell v. Alvarez*, No. 09 C 8033, 2012 U.S. Dist. LEXIS 115192, at *17 (N.D. Ill. Aug. 15, 2012).

27. The letters to Pang assert that Plaintiff Cohen is guilty of being a public nuisance, in violation of the Village of Alsip Landlord Licensing Ordinance, notwithstanding that no finding of Cohen's guilt had been made by any judicial officer the day after the altercations referenced in the letters took place.

28. The Nuisance Ordinance permits the Village to revoke its permission to allow the landlord to lease property in the Village "in the event of a subsequent occurrence of a

public nuisance activity on that property". *Alsip, Illinois Code of Ordinances,* Sec. 12-706.

29. The Nuisance Ordinance permits a finding that its violation has taken place by demonstrating the occurrence of a "chronic public nuisance", a criminal finding which requires a burden of proof beyond a reasonable doubt. However, the Village's burden of proof under the Nuisance Ordinance is merely a "preponderance of the evidence", though a violation could only occur if a "chronic public nuisance" has been established.

30. The Nuisance Ordinance permits the imposition of a penalty of between $200 and $1,500 for each day that a "chronic nuisance" violation is found to exist or continue. *Id*, § 12-706.

31. The Nuisance Ordinance permits a hearing to be conducted merely "upon the recommendation of the chief of police"; and mandates that the hearing is held "by the mayor." *Id.*, 12.-707(d).

32. The Nuisance Ordinance permits the introduction of hearsay statements of third parties to be shared by police officers.

33. The Nuisance Ordinance presents a risk of an erroneous deprivation of Plaintiff's property interest in their lease, through the procedures used, when no notice is presented to Plaintiffs by Defendants, and unreliable evidence may be used to support Defendants' claims.

34. It is, and has been, during the relevant statutory period, the official policy of the Village of Alsip to issue notices similar to the Letter to landlords, about their tenants, prior to and/or regardless of whether any finding of the tenant's guilt had been made by any

judicial officer after an allegation of public nuisance is made by the Chief of Police, and/or when no incident had taken place "in or on the Rental Property" that was the subject of a report of a law enforcement agency that describes public nuisance activity "in or on the same rental property".

35. Defendants' custom or practice of issuing such notices to landlords is a pervasive, long-standing practice, having occurred over many years, that has the force of law.

36. The Village's highest level of administrators, including those who have given input into or were involved in overseeing the administration of rental leases in the Village of Alsip, have been aware of these policies, customs and practices.

37. The Village's policy, custom or practice of issuing violation notices to landlords in the Village of Alsip is objectively deliberately indifferent to the likelihood a particular constitutional violation did or would occur.

38. It is an obvious consequence of the Village's conduct in serving notice on landlords with rental properties in the Village of Alsip that numerous notices of violation have been issued by the Village for an alleged violation of the Nuisance Ordinance.

39. The Village's conduct as described above violates the Fourteenth Amendment's Equal Protection Clause because it intentionally and without rational basis treats an individual, who has been accused by the Chief of Police, of "becoming a public nuisance", even before the institution of any legal proceedings against or involving the individual, and without reliable or admissible evidence.

40. The Village's conduct as described above fails to secure every person within the Village's jurisdiction against intentional and arbitrary discrimination, whether occasioned

by express terms of a statute or by its improper execution through duly constituted agents.

41. The Village's conduct as described above, in issuing citations for conduct that is not lawfully proscribed by State or municipal law, implicates the right to due process, because it actually interferes's with such person's right to housing; and because it uses a classification which serves to penalize, and/or unreasonably burdens the exercise of that right; and implicates the right to liberty, because it interferes with such person's personal freedom to be in their own home; with family relationships, child rearing, and education; and with such person's right to meaningfully engage in any of the common occupations of life activities as a person while within the boundaries of the Village of Alsip, Illinois.

42. There is nothing reasonable about the issuance by the Village of a violation notice to or about Plaintiffs and others when there has been no notice provided directly to such persons, no actual violation of law, nor the institution of any hearing to demonstrate any violation of law; and it is inappropriate to leave to the Village's discretion permission to issue such a violation notice for no violation of law.

43. Defendants' notices to landlords, on the official letterhead of the Chief of Police of the Village of Alsip, carry the authority of the Village.

44. Defendants' notices to landlords, on the official letterhead of the Chief of Police of the Village of Alsip, carry the implication that the alleged violation of the Nuisance Ordinance has already been established by the Village.

45. The actions of Defendant Village of Alsip and Defendant Jay Miller, described above, whereby Defendants knowingly or recklessly issued violation notices to and/or

about Plaintiffs and the putative class without probable cause or any other legal justification, constitute deliberate indifference to Plaintiffs' and the putative class' rights under the U.S. Constitution, thus violating the Fourteenth Amendment to the United States Constitution and established federal statutory and case law, since there has been no violation of law whatsoever by Plaintiffs or members of the putative class at the time such violation notices are issued.

46. Plaintiffs and the putative class have a fundamental constitutional right to the use of the property they have leased, and a fundamental constitutional right to equal protection of the laws under the Fourteenth Amendment to the Constitution.

47. The Village of Alsip has no rational or reasonable or legitimate basis for attempting to enforce a Village Nuisance Ordinance that permits a finding of guilt and the imposition of penalties prior to any notice to tenants, nor prior to any hearing or proceeding about the allegations of being a public nuisance, and therefore offends the equal protection guarantee of the Fourteenth Amendment.

48. Plaintiffs and the members of the putative class defined below were injured by Defendant's conduct and violations of federal law.

## CLASS ALLEGATIONS

49. Pursuant to Fed. R. Civ. P. 23(a) and 23(b)(3), Plaintiffs bring this action on behalf of a class, consisting of all persons who are or were tenants in the Village of Alsip and to whom their landlords were issued a violation notice by either of Defendants for the alleged violation of the "chronic nuisance" portion of the Village of Alsip Landlord Licensing Ordinance.

50. The class is so numerous that joinder is impracticable. On information and belief, there are more than 50 members of the class.

51. There are questions of law and fact common to the members of the class, which predominate over any questions that affect only individual class members. The predominant common questions include

    a. Whether Defendant's Violation Notices issued for an alleged violation of the Nuisance Ordinance contradict the body of federal law permitting and requiring Due Process; and

    b. Whether Defendants' actions in issuing a Violation Notice violates the U.S. Constitution; and

    c. Whether Defendants' actions in issuing a Violation Notice have the effect of unlawful discrimination on the basis of race, and a disparate impact upon Black persons, who are statistically more likely to be accused of having committed a crime than other persons;

    d. Whether Defendants' actions are aimed at restricting the housing choices of racial minorities or targeting those who provide housing to racial minorities; and

    e. the appropriate relief to class members.

52. Plaintiffs' claim is typical of the claims of the class members. All claims are based on the same factual and legal theories.

53. Plaintiffs will fairly and adequately represent the interests of the class members.

54. A class action is superior to other alternative methods of adjudicating this dispute. Individual cases are not economically feasible; resolving the claims of class members,

based on virtually identical facts and law, would promote judicial efficiency and provide appropriate relief from Defendants' wrongdoing.

## COUNT I - VIOLATION OF 42 U.S.C. § 1983 - DUE PROCESS

55. Plaintiffs incorporate the allegations of Paragraphs 1 through 54 as if fully set forth herein.

56. 42 U.S.C. 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.
> 42 U.S.C. § 1983.

57. Defendant Chief of Police Jay Miller acted under color of state law in issuing the violation notice about Plaintiffs and/or to property owners, and each member of the putative class, since the Village Ordinance is "state law" for purposes of Section 1983.

58. Defendant Chief of Police Jay Miller's actions in issuing such violation notices have deprived Plaintiffs and the members of the putative class of their rights, privileges, or immunities guaranteed by the Constitution, because Plaintiff and the members of the putative class are guaranteed equal protection under the laws of the states in which they are residents.

59. Defendant Chief of Police Jay Miller's conduct proximately caused Plaintiff's deprivation of rights.

60. Defendant Chief of Police Jay Miller violated Plaintiffs' and all putative Plaintiff class members' right to due process in violation of the Fourteenth Amendment, enforceable through 42 U.S.C. § 1983.

WHEREFORE, Plaintiff requests the following relief:

    A.    Certify a class of individuals as defined in paragraph 49, *infra*;

    B.    Declare and find that the Defendants committed one or more of the following acts:

        i. Acted under color of state law in issuing a Violation Notice to Plaintiffs and/or to their landlords, and to the class, and

        ii. Recklessly or Willfully acted in issuing such Violation Notices;

    C.    Order equitable relief in the form of a mandatory injunction, mandating that Defendant cease and desist from issuing such Violation Notices in the future;

    D.    Award compensatory damages to Plaintiffs and the class, in an amount according to proof;

    E.    Award punitive damages to Plaintiffs and the class, in an amount according to proof;

    F.    Award all costs and reasonable attorney's fees incurred prosecuting this claim; and

    G.    For such further relief as the Court deems just and equitable.

**COUNT II - DUE PROCESS- MUNICIPAL LIABILITY UNDER 42 U.S.C. § 1983**

61. Plaintiffs incorporate the allegations of Paragraphs 1 through 60 as if fully set forth herein.

62. The Village of Alsip at all relevant times has maintained a policy, custom, or practice that has been the cause, and the moving force, behind the violation of citizens' rights. Specifically, this policy, custom, or practice is as set forth above, including in paragraphs 35, 36, 37 & 38.

63. The above-described policy, custom, or practice was the direct, proximate cause of Chief of Police Jay Miller violating Plaintiffs' Fourteenth Amendment rights, enforceable through 42 U.S.C. § 1983.

    WHEREFORE, Plaintiff requests the following relief:

    A.    Certify a class of individuals as defined in paragraph 49, *infra*;

    B.    Declare and find that the Defendants committed one or more of the following acts:

        i. Acted under color of state law in issuing a Violation Notice to Plaintiffs and/or to their landlords, and to the class, and

        ii. Recklessly or Willfully acted in issuing such Violation Notices;

    C.    Order equitable relief in the form of a mandatory injunction, mandating that Defendant cease and desist from issuing such Violation Notices in the future;

    D.    Award compensatory damages to Plaintiffs and the class, in an amount according to proof;

  E. Award punitive damages to Plaintiffs and the class, in an amount according to proof;

  F. Award all costs and reasonable attorney's fees incurred prosecuting this claim; and

  G. For such further relief as the Court deems just and equitable.

## COUNT III-
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

64. Plaintiffs incorporate the allegations of Paragraphs 1 through 63 as if fully set forth herein.

65. Plaintiffs have suffered the very real possibility of being dispossessed of their home, through the termination of their lease, because of Defendant Chief of Police Jay Miller's conduct in notifying Pang that Plaintiffs were or are considered to be a "Public Nuisance", which would subject Pang himself to revocation of his license to rent to Plaintiffs or anyone else within the boundaries of the Village of Alsip.

66. The conduct of Chief of Police Jay Miller in sending the letters attached as Exhibits 1 & 2 was extreme and outrageous and was intended to cause and did cause Plaintiffs severe emotional distress.

67. The acts and omissions of Chief of Police Jay Miller were taken within the scope of his employment by the Village of Alsip Police Department.

68. Defendants either intended that Chief of Police Jay Miller's conduct should inflict severe emotional distress, or knew that there was a high probability that his conduct would cause severe emotional distress.

69.   Defendants' conduct in fact caused severe emotional distress to Plaintiffs.

WHEREFORE, Plaintiffs Naquita Williams and Samara Cohen seek judgment against Chief of Police Jay Miller and the Village of Alsip in the amount of One Million ($1,000,000) dollars compensatory and punitive damages, plus attorney fees and costs.

JURY DEMANDED

Date: September 9, 2022

**Respectfully Submitted,
NAQUITA WILLIAMS and
SAMARA COHEN
Individually and on Behalf of
All Others Similarly Situated.**

By: /s/ Jeffrey Grant Brown

Jeffrey Grant Brown
Jeffrey Grant Brown, P. C.
65 West Jackson Blvd. #107
Chicago, IL  60604
(312) 789-9700
Jeff@JGBrownlaw.com
ARDC #6194262