IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Naquita Williams and Samara Cohen, individually and on behalf of a class of similarly situated individuals,<br><br> Plaintiffs,<br><br>v.<br><br>Village of Alsip, Illinois, acting by and through its police department; and Jay Miller, individually and in his official capacity as Chief of Police,<br><br> Defendants. | Case No. 22 C 4892<br><br>Hon. LaShonda A. Hunt |

**MEMORANDUM OPINION AND ORDER**

Plaintiffs Naquita Williams and Samara Cohen sued Defendants Village of Alsip, Illinois, and Chief of Police Jay Miller under 42 U.S.C. § 1983 for violation of the Fourteenth Amendment Due Process Clause and under state law for intentional infliction of emotional distress in connection with Alsip's chronic public nuisance property ordinance. Defendants moved to dismiss Plaintiffs' complaint for lack of jurisdiction and failure to state a claim. For the reasons discussed below, Defendants' motion to dismiss [14] is granted. Plaintiffs' constitutional claims are dismissed with prejudice because they cannot allege a constitutional deprivation and they lack standing. The Court declines to exercise supplemental jurisdiction over any remaining state law claims and therefore dismisses them without prejudice.

**BACKGROUND**

On September 29, 2021, Chief Miller sent a letter to the landlord of an apartment that Williams leased and lived at with her daughter, Cohen. In the letter, Chief Miller informed Plaintiffs' landlord that their rental unit "may be in the [sic] danger of becoming a chronic public

1

nuisance property . . . ." (Compl., Ex. 1, Dkt. 1-1). Chief Miller reported that the prior day Cohen "was involved in a traffic accident in town[,] then punched the victim of the traffic crash in the face and resisted [police] while being placed under arrest[, and] was arrested for Battery and Resisting Arrest." (*Id.*) According to Chief Miller, the "incident [was] directly related to [Plaintiffs' unit]." (*Id.*) As a result, he recommended that "corrective action be taken on [the landlord's] part to ensure that subsequent public nuisance activity does not reoccur." (*Id.*) Otherwise, on the third occurrence per individual unit or the sixth occurrence per entire structure within a year, the "rental property could be deemed a chronic nuisance rental property." (*Id.*) Reiterating his prior recommendation, Chief Miller advised Plaintiffs' landlord to "[p]lease take whatever necessary steps [the landlord] deem[ed] appropriate to prevent this from happening." (*Id.*) Plaintiffs describe the incident differently, alleging that "the driver of another vehicle struck the vehicle Cohen was driving; and then attempted to strike [Cohen] with her vehicle. An altercation ensued; and Cohen was arrested by Alsip Police[.]" (Compl. ¶ 14). In addition, Plaintiffs maintain that the incident "did not take place in or on the Rental Property[,]" a fact which "Defendants knew when they sent the [l]etter[.]" (Compl. ¶ 20).

Approximately five months later, in early March 2022, Chief Miller sent another letter to Plaintiffs' landlord. In the second letter, Chief Miller reported that a few days earlier, "while investigating a fight in progress, it was discovered [that] an alleged drug transaction ended with injuries to [Cohen] and a warrant of arrest [for Cohen,] and [t]he Battery offense being investigated resulted in three (3) arrests." (Compl., Ex. 2, Dkt. 1-2). According to Chief Miller, the "incident [was] directly related to [Plaintiffs' unit]." (*Id.*) The second letter contained the same public nuisance property warnings and corrective and preventative action recommendations as the first.

Plaintiffs do not offer their own account of the incident described in the second letter or claim that it did not take place at the rental property.

Both letters were sent in accordance with Section 12-707 of the Municipal Code of the Village of Alsip, Illinois. Alsip Mun. Code § 12-707. As detailed below, the ordinance prohibits rental units and properties in Alsip from being public nuisances, establishes procedures for both notifying a landlord when a property is in danger of becoming a public nuisance and declaring that a property is a chronic public nuisance, and provides that a landlord's residential operator's license may be denied, suspended, or revoked if a property is declared to be a public nuisance. *Id.* Plaintiffs believe that there are at least fifty people "who are or were tenants in [Alsip] and to whom their landlords were issued a [letter] by [Defendants] for the alleged violation of [§ 12-707]." (Compl. ¶¶ 49-50).

According to Plaintiffs, the letters caused them to suffer "the very real possibility of being dispossessed of their home" and "severe emotional distress." (*Id.* ¶¶ 65, 66). Plaintiffs conclude that it was "extreme and outrageous" for Chief Miller to send the letters and "Defendants either intended that [sending the letters would] inflict severe emotional distress, or knew that there was a high probability that [doing so] would cause severe emotional distress." (*Id.* ¶ 68). To illustrate this point, Cohen adds that she was so distraught by Defendants conduct, she left the apartment rented by Williams to reside with her father outside of Alsip. (Resp. at 14). Cohen claims that it was not just the letters that caused her to move but also the police officers who sat in marked cruisers across from her home for months after the second letter and followed her to the village limits when she left her home. (*Id.*)

Plaintiffs filed a three-count complaint based on these events, the letters, and similar letters believed to have been sent to other Alsip residents' landlords. Counts I and II assert claims under

3

42 U.S.C.§ 1983 for violation of the Fourteenth Amendment Due Process Clause against Alsip and Chief Miller on behalf of Plaintiffs and a putative class of similarly situated individuals. Count III is a claim for intentional infliction of emotional distress under state law by Plaintiffs against Alsip and Chief Miller. Plaintiffs seek an injunction against the issuance of further public nuisance letters, compensatory and punitive damages, and attorney's fees and costs.

## LEGAL STANDARDS

### Federal Rule of Civil Procedure 12(b)(1)

Rule 12(b)(1) allows parties to challenge a pleading based on a lack of subject-matter jurisdiction. Fed. R. Civ. P. 12(b)(1). The Court reviews standing arguments under Rule 12(b)(1) because standing implicates the Court's subject matter jurisdiction. *Smith v. City of Chi.*, 143 F. Supp. 3d 741, 748 (N.D. Ill. 2015). In reviewing a Rule 12(b)(1) dismissal motion based on standing, "the district court must accept as true all material allegations of the complaint, drawing all reasonable inferences therefrom in the plaintiff's favor, unless standing is challenged as a factual matter." *Remijas v. Neiman Marcus Grp., LLC*, 794 F.3d 688, 691 (7th Cir. 2015) (quoting *Reid L. v. Ill. State Bd. of Educ.*, 358 F.3d 511, 515 (7th Cir. 2004)). The burden of establishing the required elements of standing falls on the party invoking federal jurisdiction. *Johnson v. U.S. Off. of Pers. Mgmt.*, 783 F.3d 655, 661 (7th Cir. 2015). "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3).

### Federal Rule of Civil Procedure 12(b)(6)

Rule 12(b)(6) permits a party to move for dismissal based on a pleading's "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In determining whether a complaint states a claim under Rule 12(b)(6), courts must accept all non-conclusory factual allegations as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). However, legal conclusions and

4

"[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). In addition, the Court must construe the complaint in the light most favorable to the plaintiff and draw all reasonable inferences in the plaintiff's favor. *Levy v. W. Coast Life Ins. Co.*, 44 F.4th 621, 626 (7th Cir. 2022). While ruling on a motion to dismiss for failure to state a claim, a court may generally consider only the plaintiff's complaint, exhibits to the complaint, matters central to the plaintiff's claim and incorporated into the complaint by reference, and items subject to judicial notice. *Geinosky v. City of Chi.*, 675 F.3d 743, 745 n.1 (7th Cir. 2012).[1] Applying these principals, a complaint will survive a motion to dismiss if it "states a plausible claim for relief." *Ashcroft*, 556 U.S. at 679 (2009) (citing *Twombly*, 550 U.S. at 556). To state a plausible claim for relief, a complaint must "permit the court to infer more than the mere possibility of misconduct[.]" *Id.* at 679. The movant has the ultimate burden to show that dismissal is warranted. *Marcure v. Lynn*, 992 F.3d 625, 631 (7th Cir. 2021).

## DISCUSSION

Defendants move to dismiss the complaint on several grounds. First, Defendants assert that sending two letters to Plaintiffs' landlord is not enough to establish a deprivation of any rights under the Fourteenth Amendment Due Process Clause. (Mot. at 4-6). And even if Defendants or Plaintiffs' landlord had taken further action aimed at dispossessing Plaintiffs of their apartment, such as revoking or suspending the landlord's license or pursuing an eviction, Defendants maintain that the applicable ordinances and state court eviction proceedings would provide sufficient substantive and procedural due process. (*Id.* at 6-9). Second, Defendants contend that Plaintiffs do

---

[1] A party opposing a Rule 12(b)(6) motion may elaborate on factual allegations so long as the new elaborations are consistent with the pleadings and submit materials outside the pleadings to illustrate the facts the party expects to be able to prove. *Id.*

5

not allege an injury in fact and therefore lack standing because they "do not, and cannot claim that the landlord, Chief of Police, or the Village of Alsip have taken any further steps or actions against them that could potentially result in an injury, such as ordering an eviction." (*Id.* at 11). Last, Defendants argue that Count III fails to state a claim for intentional infliction of emotional distress because, "after setting aside [the] conclusory allegations, the well-pled allegations that remain . . . fail to plausibly establish that the conduct at issue was intended to cause severe emotional distress, and further fails to demonstrate that said conduct was extreme and outrageous, going beyond all possible bounds of decency." (*Id.* at 13). For context, the Court will briefly summarize the provisions of the applicable local ordinance before addressing these arguments.

**I.     Alsip's Chronic Public Nuisance Property Ordinance**

Alsip's Landlord Licensing Ordinance sets forth a comprehensive set of provisions that govern the operation of residential rental structures in the village. Alsip Mun. Code art. XXIII. Primarily at issue in this case is Section 12-707, which establishes the procedure for declaration of a chronic nuisance property. A "chronic public nuisance property" is "any rental unit at, in or which any three or more public nuisances have occurred within any one-year period, and any multi-family rental structure at, in or which any six or more public nuisances have occurred within any one-year period." § 12-700. A "public nuisance" is an offense listed in the ordinance, including "[a]ny offense defined and prohibited by Article 12 (Bodily Harm) of the Criminal Code of 1961, 720 ILCS 5/12, et seq." and "[a]ny offense defined and prohibited by Article 31 (Interference with Public Officers) of the Criminal Code of 1961, 720 ILCS 5/31-1, et seq." *Id.*

Section 12-707 creates a three-step process for declaration of a chronic public nuisance property. First, when the chief of police receives a police report describing public nuisance activity, the chief notifies the landlord that "that the property may be in danger of becoming a chronic

public nuisance property." § 12-707(b)(1). The notice must include: the address of the subject property or unit; a description of the public nuisance activities; a demand for corrective action; an explanation that the property may be declared a chronic public nuisance; a recommendation that the landlord enforce the crime free lease provision[2] through eviction or take other necessary action; and notification that the landlord may request a hearing before the mayor to contest the determination of an occurrence of public nuisance activity. *Id.* A similar notice is sent for subsequent public nuisance activity that occurs within one year. § 12-707(b)(2).

Second, if the chief of police receives the report of an occurrence of public nuisance activity that meets or exceeds the allowable number for a property and determines that the property has become a chronic public nuisance property, the chief notifies the landlord that the property has been declared a chronic public nuisance property. § 12-707(c). The notice must include: the address of the subject property or unit; a statement that the property has been declared a chronic public nuisance property and a description of the activities leading to that finding; and a statement that the chief has recommended to the mayor that the landlord's license be denied, suspended, or revoked. § 12-707(c)(1).

Finally, a hearing on denial, suspension, or revocation of the landlord's residential operator's license is held before the mayor. § 12-707(d). At the hearing, the village bears "the initial burden of showing by a preponderance of evidence that the property is a chronic public nuisance property." § 12-707(e)(1). In making that showing, the village may rely on "the testimony of police officers to recount witness statements[.]" § 12-707(e)(2). If the landlord's license is denied, suspended, or revoked, it becomes unlawful to operate the property for residential purposes

---

[2] The crime free housing provision of the Landlord Licensing Ordinance requires landlords to include a form crime-free provision in leases, which makes certain criminal activity a lease violation and provides the landlord with authority to initiate eviction proceedings for any such violation. § 12-708(h).

and permit occupancy. § 12-701(a). Violations are subject to fines and civil actions by the village to enforce compliance. §§ 12-706, 12-709. Although the ordinance provides for notices to be provided to landlords throughout the process, it does not require that notice be provided to tenants unless and until a landlord's license has been suspended or revoked. § 12-707(f).

### II. <u>Constitutional Deprivation</u>

In Counts I and II of the complaint, Plaintiffs assert claims under 42 U.S.C. § 1983 for violation of the Fourteenth Amendment Due Process Clause based on the public nuisance activity notice letters sent by Chief Miller. Defendants move to dismiss these counts on the grounds that the letters have not deprived Plaintiffs of any due process rights and that local ordinances and state eviction laws would provide sufficient due process if further action were taken. Plaintiffs disagree and claim that the ordinance "allows Defendants to present Plaintiffs as guilty of guilty [sic] of the crime of being a public nuisance," subjects them to fines, and "presents a risk of an erroneous deprivation of Plaintiffs' property interest in their leased property[.]" (Resp. at 4-5). Specifically, Plaintiffs criticize the procedures set forth in the ordinance, which they say do not require notice to tenants, permit "unreliable evidence," and "establish . . . criminal liability upon a 'preponderance of the evidence' standard." (*Id.*) Thus, Plaintiffs believe that they "were deprived of any notice from Defendants that Alsip or Defendant Miller would conclusively establish that Plaintiffs committed the criminal act of using their rented property as a 'chronic public nuisance' before sending letters containing those allegations to their landlord[.]" (*Id.* at 6).

The first step in any § 1983 suit is to determine "whether the plaintiff has been deprived of a right secured by the Constitution and laws of the United States." *Reichenberger v. Pritchard*, 660 F.2d 280, 284-85 (7th Cir. 1981) (citing *Martinez v. California*, 444 U.S. 277, 284 (1980)). "The mere possibility of remote or speculative future injury or invasion of rights will not suffice."

8

*Id.* at 285. Rather, "the complaint must allege an actual deprivation of rights resulting from the defendants' acts." *Id.*

In the housing context, the Supreme Court has held that any deprivation of due process rights in connection with a property interest in a lease would occur in the state court eviction proceeding. *Dep't of Hous. & Urb. Dev. v. Rucker*, 535 U.S. 125, 136 (2002). In *Rucker*, several tenants faced eviction for violation of a lease provision prohibiting drug-related criminal activity. *Id.* at 129-30. Although the case dealt primarily with statutory interpretation, the Supreme Court addressed the lower court's discussion of due process by explaining that any "such deprivation will occur in the state court where [the landlord] brought the [eviction] action against [the tenants]." *Id.* at 136. Notably, the Court added that "[a]ny individual factual disputes about whether the lease provision was actually violated can, of course, be resolved in these proceedings." *Id.* Thus, for a deprivation to occur in this context, there must be an eviction or other action aimed at terminating Plaintiffs' interest in their lease. And any factual disputes about the basis for such action would be appropriately addressed in that proceeding.

Furthermore, even where an eviction proceeding has been filed, no deprivation occurs unless a plaintiff has been evicted, lost leasehold rights, or had their lease terminated. *Thomas v. Chi. Hous. Auth.*, 919 F. Supp. 1159, 1167 (N.D. Ill. 1996); *Herring v. Chi. Hous. Auth.*, 850 F. Supp. 694, 697-98 (N.D. Ill. 1994). In *Thomas,* the court dismissed the plaintiff's due process claim, to the extent one was asserted, because the plaintiff had not been evicted, did not allege that her lease was terminated or that she lost leasehold rights, and continued to live in the same apartment. 919 F. Supp. at 1167. Similarly, in *Herring*, the eviction proceeding against the plaintiff had been dismissed, the plaintiff's lease had not been terminated, and the plaintiff remained in her apartment throughout the litigation. 850 F. Supp. at 697. As a result, the court held that "no

deprivation has occurred and Plaintiff's Due Process, United States Housing Act, and lease claims must fail." *Id.* at 698.

The closest Plaintiffs' complaint comes to alleging a constitutional deprivation is the allegation that the chronic public nuisance property ordinance "*presents a risk of an erroneous deprivation* of Plaintiff's property interest in their lease, through the procedures used, when no notice is presented to Plaintiffs by Defendants, and unreliable evidence may be used to support Defendants' claims." (Compl. ¶ 33 (emphasis added)). Elsewhere in the complaint, in connection with their intentional infliction of emotional distress claim, Plaintiffs allege that they "have suffered the very real *possibility of being dispossessed of their home*, through the termination of their lease . . . ." (Compl. ¶ 65 (emphasis added)). But Plaintiffs do not allege that they have been evicted, their landlord has taken any steps toward evicting them, they have lost any leasehold rights, or their lease has been terminated. Rather, it appears that Williams still resides in the apartment and Cohen decided to move out.[3]

At most, Plaintiffs have alleged only a "risk" and "possibility" of being deprived of any interest in the lease. But the "mere possibility of remote or speculative future injury or invasion of rights" is not sufficient to state a due process claim—the complaint must allege an actual deprivation. Thus, those allegations do not support Plaintiffs' Fourteenth Amendment Due Process Clause claims.

Still, Plaintiffs maintain that they are not able to present their claim at a "meaningful time" if they must be evicted to state a claim. (Resp. at 8-9 (citing *Knutson v. Vill. of Lakemoor*, 932

---

[3] In Plaintiffs' response, they allege that Cohen was so distraught that she eventually "left" the apartment to reside outside of Alsip due to the letters and continued harassment by the police. (Resp. at 14). This allegation was made in support of Plaintiffs' intentional infliction of emotional distress claim, so it is unclear whether Plaintiffs relies on it as the potential source of a constitutional deprivation. But even if the allegation were made to bolster the due process claims, Plaintiffs have not cited any authority to support such a position.

F.3d 572, 576 (7th Cir. 2019) ("The cornerstone of due process is notice and the opportunity to be heard at a meaningful time and in a meaningful manner."))). As the case law suggests, a state court eviction proceeding would provide a meaningful opportunity for Plaintiffs to oppose any action taken by their landlord because of the Village's public nuisance ordinance. *Rucker*, 535 U.S. at 136. Accordingly, just as the plaintiffs in *Thomas* and *Herring* were unable to allege a deprivation of their due process rights because they had not been evicted, lost any leasehold rights, or had their lease terminated and instead continued to reside in their apartments, Plaintiffs too are unable to allege a constitutional deprivation.

In addition to the threat against Plaintiffs' property interest in their apartment, Plaintiffs claim that they have a "legitimate property interest in establishing their innocence, and their personal privacy and the accuracy of disclosures about them." (Resp. at 9). To the extent that any property interest in establishing one's innocence exists, the criminal proceedings on Cohen's battery charges provide the requisite due process. And, to the extent that privacy interests are implicated by the facts of this case, long-standing precedent holds that a person's right to privacy does not generally protect against the disclosure of the fact that someone has been arrested. *See Paul v. Davis*, 424 U.S. 693, 713 (1976).

Finally, Plaintiffs argue that the ordinance allows Defendants to present Plaintiffs as guilty of a crime, permits unreliable evidence to be used against them, and establishes criminal liability on a preponderance of the evidence standard. These arguments are without merit. Both the ordinance and the letters plainly state that the chief of police is relaying information about an incident from a police report to the landlord and that the tenant has been arrested for a crime, not convicted. Furthermore, while testimony from a police officer about witness statements might not be admissible evidence in a courtroom, the rules of evidence that govern administrative hearings

conducted under local ordinances may allow for such testimony. If Plaintiffs were to contest an eviction action in state court and raise individual factual disputes in that context, traditional rules of evidence would apply. Last, the procedures Alsip has enacted to abate chronic public nuisance properties affect relations between the Village, landlords, and residents, they do not establish criminal liability or guilt. The ordinance and letters do not present Cohen as guilty, conclusively establish that Cohen committed criminal acts, or give notice that she has been accused, tried and convicted of a criminal act, despite Plaintiffs' assertions to the contrary.

In sum, Plaintiffs have not alleged the deprivation of any right protected under the Fourteenth Amendment Due Process Clause and, more importantly, they appear unable to do so. For these reasons, Counts I and II fail to state a claim and must be dismissed with prejudice.

**III.** <u>**Standing**</u>

Just as Plaintiffs cannot allege an actual deprivation of their due process rights, they cannot satisfy the standing requirements for their constitutional claims. Article III of the United States Constitution limits the jurisdiction of federal courts to actual cases or controversies. U.S. Const. art. III § 2; *Spokeo, Inc. v. Robins*, 578 U.S. 330, 337 (2016). Rooted in the case or controversy requirement, a plaintiff must have "standing" to sue. *Id.* at 338. To have standing, a plaintiff "must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo*, 578 U.S. at 338 (citing *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 180-181 (2000); *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-561 (1992)). To establish injury in fact, which is "the '[f]irst and foremost' of standing's three elements[,]" the "plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Id.* at 338-39 (quoting *Steel Co. v.*

*Citizens for Better Env't,* 523 U.S. 83, 103 (1998); *Lujan,* 504 U.S. at 560) (internal quotation marks omitted).

Here, the standing analysis begins and ends with the first element. As discussed above, Plaintiffs allege that the ordinance and letters created a "risk" or "possibility" that their landlord might attempt to remove them from their apartment. These are the types of conjectural and hypothetical allegations that are insufficient to give rise to an injury in fact. Without an allegation that any of those risks or possibilities materialized, Plaintiffs cannot claim that they suffered an invasion of any legally protected interest, such as rights under the lease for their apartment. Accordingly, Plaintiffs have failed to allege an injury in fact and therefore lack standing to assert claims under the Fourteenth Amendment Due Process Clause.

### IV. Intentional Infliction of Emotional Distress

Count III of the complaint asserts a claim for intentional infliction of emotional distress against Defendants under state law. Having dismissed the claims over which the Court purportedly had original jurisdiction, the Court has discretion on whether to exercise supplemental jurisdiction over Count III. 28 U.S.C. § 1367(c)(3). In making that determination, the Court considers and weighs "the values of judicial economy, convenience, fairness, and comity[.]" *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988). If "the balance of these factors indicates that a case properly belongs in state court, *as when the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain*, the federal court should decline the exercise of jurisdiction by dismissing the case without prejudice." *Id.* (emphasis added); *Porter v. Suliene*, 391 F. App'x 565, 568 (7th Cir. 2010) ("When a district court correctly dismisses all federal claims before trial, the court ordinarily should relinquish jurisdiction over any supplemental claims."); *Doe-2 v. McLean Cnty. Unit Dist. No. 5 Bd. of Dirs.,* 593 F.3d 507, 513 (7th Cir. 2010); *Hansen*

13

*v. Bd. of Trs. of Hamilton Se. Sch. Corp.,* 551 F.3d 599, 607 (7th Cir. 2008). But even if a court dismisses a claim upon which federal jurisdiction is predicated, remaining state law claims may be addressed on the merits "where the defeat of the federal claim necessarily requires the defeat of the state law claims." *Burrell v. City of Mattoon*, 378 F.3d 642, 651 (7th Cir. 2004); *Miller Aviation v. Milwaukee Cnty. Bd. of Supervisors,* 273 F.3d 722, 731 (7th Cir. 2001) ("[W]hen the district court, in deciding a federal claim, decides an issue dispositive of a [supplemental] claim there is no use leaving the latter to the state court."). Here, considering the values of judicial economy, convenience, fairness, and comity, the Court declines to exercise jurisdiction over the state law intentional infliction of emotional distress claim. Accordingly, Count III is dismissed without prejudice.

**V.    Other Claims**

    **A.  Equal Protection**

Counts I and II of the complaint both include the words "DUE PROCESS" in their titles and substantively assert § 1983 claims for violation of the Fourteenth Amendment Due Process Clause. Nonetheless, the complaint includes several references to "equal protection." (Compl. ¶¶ 39, 40, 46, 47, 51, 58). Plaintiffs' response brief also references equal protection. (Resp. at 2, 5, 8). Despite having no separate claim for equal protection in the complaint, Plaintiffs state that they "have also alleged a violation of the Equal Protection Clause," (Resp. at 5), and include a section entitled "III. Plaintiffs Have Established Violations [o]f Due Process and the Equal Protection Clause." (Resp. at 8). Despite the title, that section of the brief discusses due process only and does not address to equal protection.

Generally, the references to equal protection in Plaintiffs' filings are conclusory and offer little, if any, factual context. The only insights as to the basis for Plaintiffs' purported equal

protection claims appear in the complaint, where Plaintiffs recite common questions affecting class members, (Compl. ¶ 51(c) ("Whether Defendants' actions in issuing a Violation Notice have the effect of unlawful discrimination on the basis of race, and a disparate impact upon Black persons, who are statistically more likely to be accused of having committed a crime than other persons")), and in nearly identical language in the response brief, (Resp. at 5).

Here, Plaintiffs' general allegation that the ordinance is discriminatory on the basis of race and has a disparate impact on Black persons because Black persons are statistically more likely to be accused of having committed a crime offers no case-specific detail beyond the general assertions necessary to plausibly allege any equal protection claim. This and the other factually undeveloped and conclusory references to equal protection are precisely the type of "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," that the Supreme Court has held "do not suffice." *Ashcroft*, 556 U.S. at 678. Indeed, if a complaint "tenders 'naked assertion[s]' devoid of 'further factual enhancement[,]'" then it does not satisfy the requirement of Rule 8(a)(2) that a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." *Id.* (quoting *Twombly*, 550 U.S. at 557).

In addition, Plaintiffs have failed to articulate any independent basis for standing to support their purported equal protection claims. As such, the conclusion reached by the Court as to Plaintiffs' lack of standing with respect to the due process claims applies equally here. For these reasons, to the extent that the complaint alleges any claim for violation of the Fourteenth Amendment Equal Protection Clause, it is also dismissed with prejudice.

### B. Defamation

Although the complaint does not reference defamation, Plaintiffs' response describes Defendants' conduct and statements as defamatory; comments on the Village having no right to

defame an individual; declares that the statement in the first letter about Cohen punching another person is defamation per se; and cites Illinois case law on the issue. (Resp. at 9-11). To the extent that Plaintiffs purport to assert a defamation claim, the Court seriously doubts whether the pleading standards are satisfied but, in any event, declines to exercise supplemental jurisdiction for the same reasons discussed above in connection with Plaintiffs' intentional infliction of emotional distress claim. As such, to the extent Plaintiffs assert a defamation claim, it too is dismissed without prejudice.

## CONCLUSION

For the reasons stated above, Defendants' motion to dismiss is granted. Plaintiffs' constitutional claims are dismissed with prejudice. Plaintiffs' state law claims are dismissed without prejudice to refiling in a court with jurisdiction.

**DATED**: March 14, 2024　　　　　　　　　　　　**ENTERED**:

　　　　　　　　　　　　　　　　　　　　　　　　_LaShonda A. Hunt_
　　　　　　　　　　　　　　　　　　　　　　　　LaShonda A. Hunt
　　　　　　　　　　　　　　　　　　　　　　　　United States District Judge